**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Charles McManus, | ) | No. CV-01-1225-PHX-MHM |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| Gibson, et al. | ) ) | |
| Defendants. | ) ) ) | |

This case is before the Court on Defendants' supplemental motion for summary judgment. (Doc.117). Defendants have filed a statement of facts in support of the supplemental summary judgment motion. (Doc. 118). Plaintiff pro se has filed a response in opposition to Defendants' supplemental motion for summary judgment (Doc. 119), a supplemental statement of facts which is conclusory (Doc. 120), and a declaration. (Doc. 121). The Court has determined that oral argument would not materially assist in the resolution of Defendants' supplemental motion for summary judgment.

I.

Procedural Background.

Plaintiff is an inmate in the custody of the Arizona Department of Corrections. On December 19, 2001, Plaintiff filed an amended complaint against Defendants Gibson (now Svedin), Kurtz, Thomas, Velazquez and Schneider, asserting that Defendants had violated Plaintiff's due process rights in two prison disciplinary proceedings arising out of

Disciplinary Reports Numbers 00A140962 and 00A140963. In an order entered on February 15, 2005, the Court granted in part and denied in part Defendants' motion for summary judgment. (Doc. 85). Defendants' motion for summary judgment was granted as to Count II of the amended complaint which concerned Disciplinary Report Number 00A140963, and as to Defendants Velazquez, Thomas and Schneider in regard to Count I which concerned Disciplinary Report Number 00A140962. Summary judgment was granted as to all Defendants sued in an official capacity. Defendants' motion for summary judgment was denied as to the claim asserted in Count I concerning Disciplinary Report Number 00A140962 involving Defendants Gibson and Kurtz. The Court found that a genuine issue of material fact existed regarding the delivery of the written notice to Plaintiff as to Disciplinary Report Number 00A140962. The Court noted in the Order that "[t]he parties [had] not addressed whether the discipline imposed was the type of 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' which is required to trigger the protections of the Due Process Clause." (Doc. 85 - Order at n. 1).

The Court set a trial date on Plaintiff's claim in Count I as to Defendants Gibson and Kurtz. During a pretrial hearing, the Court inquired of the parties regarding the issue that procedural protections adhere only when the disciplinary actions implicate a protected liberty interest by imposing an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293 (1995). The Court vacated the trial setting and permitted the parties to file briefing addressing this issue of law. The parties thereafter filed their supplemental briefing on summary judgment.

II.

Standard of Review.

A motion for summary judgment may be granted only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Material facts are those which might affect the outcome of the suit. ... An issue is genuine if a reasonable trier of fact could find

- 2 -

1  in favor of the nonmoving party." Rivera v. Philip Morris, Inc., 395 F.3d 1142, 1146 (9th Cir.
2  2005).  To defeat the motion, the non-moving party must show that there are genuine factual
3  issues "that properly can be resolved only by a finder of fact because they may reasonably
4  be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250,
5  106 S.Ct. 2505, 2511 (1986). The party opposing summary judgment "may not rest upon the
6  mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts
7  showing that there is a genuine issue for trial." Rule 56(e). See also, Matsushita Elec. Indus.
8  Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986).

## III.

## Background Facts.

As discussed in the Court's Order of February 15, 2005, on September 12, 2000 at approximately 9:00 a.m., Plaintiff refused an order by Corrections Officer Nord to move to a different prison unit, claiming he had a "do not house" issue with another inmate. Officer Nord determined that the other inmate was not on Plaintiff's "do-not-house" list and consequently Nord advised Plaintiff he was "on report." Officer Nord prepared Disciplinary Report No. 00A140962 against Plaintiff and placed Plaintiff in a detention cell. At 12:20 p.m. on the same day, Defendant Gibson approached Plaintiff to conduct a preliminary hearing on case no. 00A140962 but Plaintiff refused to listen to Gibson. Defendant Gibson interpreted Plaintiff's refusal to communicate as a declination of his opportunity to call witnesses. At 1:00 p.m., Defendant Gibson prepared a second disciplinary report, case no. 00A140963, based on Plaintiff's behavior during their encounter. As discussed above, Defendants' first motion for summary judgment was denied as to Plaintiff's claim regarding Disciplinary Report no. 00A140962 against Defendants Gibson and Kurtz.

In September of 2000, Defendant Kurtz was the Disciplinary Hearing Officer ("DHO") at the Arizona State Prison Complex ("ASPC") – Eyman, Rynning Unit. Defendant Kurtz was a DHO for a 12-month period in 2000 and 2001 and conducted approximately 200 disciplinary hearings. On September 19, 2000, Kurtz conducted the Disciplinary Hearing for Plaintiff in case no. 00A140962. Defendant Kurtz found Plaintiff

- 3 -

1  guilty of a B08 major violation for failing to obey an order to move to a different housing
2  assignment. For case no. 00A140962, Defendant Kurtz imposed the following penalties as
3  to Plaintiff: 10 days detention; 40 hours extra duty; and 30 days loss of privileges.
4  According to Defendants, a B08 violation - failing to obey an order – is a very common rule
5  violation.  Under the guidelines of D1 #6, Plaintiff potentially could have received a more
6  severe punishment.  For Group B violations, an inmate can also lose good time credits.
7  Plaintiff here did not lose any good time credits.  (Doc. 118 - Exh. 1 (Kurtz Declaration);
8  Exh. 2 (Burke Declaration); Attachment A (Result of Disciplinary Hearing)).

9  Department Order 801 governs the ADC classification policy.  The purpose of this
10 policy is to outline the ADC classification procedures, including any necessary
11 reclassification.  The Correctional Classification Profile ("CCP") consists of ten factors of
12 evaluation: Public Risk Score (P); Institutional Risk Score (I); Medical and Health Care
13 Needs Score (M); Mental Health Care Needs Score (MH); Education Needs Score (E);
14 Vocational Training Needs Score (V); Work Skill Needs Score (W); Alcohol/Drug Abuse
15 Treatment Needs Score (A/D); Sex Offense Treatment Needs Score (S); and Proximity to
16 Residence Needs Score (R).

17 As relevant to this case, Defendants have provided the factors that should be
18 considered regarding the Public Risk ("P") and an Institutional Risk Score ("I").  The eight
19 factors relevant to a Public Risk Score (P) are: severity of current offense; extent of violence
20 in current offense; weapon use in current offense; escape history; history of violence;
21 confinement history; estimated length of confinement; and detainer status.  An Institutional
22 Risk Score ("I") lists eight possible elements for consideration: prior institutional adjustment;
23 community stability; inmate adjustment during initial classification; probation/parole
24 adjustment; mental health adjustment; current age; security threat group affiliation; and
25 substance abuse history.

26 The Institutional Classification Committee ("ICC") examines an inmate's records,
27 hears from the inmate, and renders a decision on whether to change or maintain the inmate's
28 classification scores. Classification update hearings are held any time an inmate has been

- 4 -

1  convicted of a new offense, such as newly adjudicated charges or disciplinary violations. A
2  change in an inmate's classification score can result in a different housing assignment.

3  On September 12, 2000, Plaintiff's P/I classification was 3/3. On September 12, 2000,
4  Plaintiff was transferred from the Cook Unit at the Eyman facility to the Complex Detention
5  Unit ("CDU") at the Rynning Unit because of a disciplinary problem.

6  After Defendant Kurtz found Plaintiff guilty of a B08 violation in case no.
7  00A140962, Kurtz referred Plaintiff for reclassification. On September 28, 2000, Defendant
8  Kurtz found Plaintiff guilty of a B16 violation in case no. 00A140963 and again referred
9  Plaintiff for reclassification. On October 5, 2000, Deputy Warden Thomas referred Plaintiff
10 to the Institutional Classification Committee ("ICC") for reclassification based on the guilty
11 findings in case nos. 00A140962 and 00A140963.

12 On October 13, 2000, the ICC recommended that Plaintiff's P/I classification score
13 be elevated from a 3/3 to a 3/5 due to the two major violations in the two disciplinary cases.
14 On October 19, 2000, ADC's Central Office approved the increase in Plaintiff's P/I score to
15 a 3/5. Plaintiff remained in the CDU from September 19, 2000, the date of the disciplinary
16 hearing in case no. 00A140962, to October 17, 2000. Defendants state that this continued
17 placement in the CDU was appropriate under the circumstances given that Plaintiff had been
18 referred for reclassification after the guilty findings for two major violations in case nos.
19 00A140962 and 00A140963.

20 On October 17, 2000, Plaintiff was transferred to the Special Management Unit
21 ("SMU") I, a Level-5 unit, for a mental health evaluation. On October 19, 2000, Plaintiff
22 was transferred back to the CDU at the Rynning Unit after his mental health evaluation at the
23 SMU I.

24 When Central Office approved Plaintiff's 3/5 P/I score on October 19, 2000, Plaintiff
25 was initially reclassified to the SMU. However, there were no beds available at the SMU.
26 Plaintiff was moved to general population in the Rynning Unit on November 28, 2000 after
27 a bed became available. Defendants state that the delay in finding an available bed for
28

- 5 -

1  Plaintiff between October 19, 2000 and November 28, 2000 is not unusual in the ADC which
2  is required to manage thousands of inmates with only limited resources.

## IV.

### Discussion.

Defendants contend in their supplemental motion for summary judgment that Plaintiff was not denied due process because the punishment imposed on case no. 00A140962 did not present the type of "atypical or significant hardship" "in relation to the ordinary incidents of prison life." Plaintiff in his response has not addressed the issue of atypical or significant hardship. Rather, Plaintiff contends that the underlying facts are in dispute and that a jury must resolve whether he was denied notice and the opportunity to call witnesses in his behalf.

Under the Fourteenth Amendment's Due Process Clause, a prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. Wolff v. McDonnell, 418 U.S. 539, 564-71, 94 S.Ct. 2963 (1974). These protections include the right to call witnesses, to present documentary evidence and to have a written statement by the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken. Id. These procedural protections adhere only when the disciplinary actions implicate a protected liberty interest by imposing an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293(1995). The ultimate issue of atypicality is an issue of law. Sealey v. Giltner, 197 F.3d 578, 585-86 (2d Cir. 1999).

As explained by the Ninth Circuit, in determining "whether a prison hardship is atypical and significant," the court relies on a "condition or combination of conditions or factors [that] requires case by case, fact by fact considerations." Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003)(quoting Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996)). Specifically, the court looks to three guideposts by which to frame the inquiry: (1) whether the challenged conditions "mirrored those conditions" imposed upon other inmates in restricted confinement for the general prison population, and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed;

and, (3) whether the state's action will invariably affect the duration of the prisoner's sentence. Id. (citing Sandin, 515 U.S. at 486-87; Keenan, 83 F.3d at 1089). If the hardship is sufficiently significant then the court must determine whether the procedures used to deprive that liberty satisfied due process. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003).

In his amended complaint, Plaintiff alleges in Count I that he failed to receive written notice and an opportunity to call witnesses in his behalf regarding Disciplinary Report No. 00A140962. Plaintiff further asserts that as a result of the alleged violation of due process, he was forced to endure "a tremendous, unjustified hardship" that included the following:

> "(1) forty days disciplinary isolation, which incidently turned out to be more like almost double that, eighty days; (2) one hundred and twenty hours of extra duty, meaning performing work without pay; and (3) two hundred and ten days loss of privileges (LOP), meaning no store, no phone, no appliances, etc."

(Doc. 7 at p. 4). Plaintiff alleges that the "no appliances" turned out to be indefinite because his television was damaged by staff to the extent that it was deemed contraband and not returned to Plaintiff. (id.).

With regard to his supplemental response on summary judgment, Plaintiff has not provided any facts that support these allegations. Plaintiff also has not provided any facts that dispute Defendants' statement of facts relevant to the disciplinary action taken in case no. 00A140962. In addition, Plaintiff has not alleged in his first amended complaint that the disciplinary action imposed in case no. 00A140962 was not within the range of confinement to be normally expected by prison inmates "in relation to the ordinary incidents of prison life."

Based on information provided in support of Defendants' supplemental motion for summary judgment, Plaintiff was initially removed from general population and placed in administrative segregation because of his refusal to move to a different housing unit. Upon being found guilty of a B08 violation on September 19, 2000, the Result of Disciplinary Hearing report regarding case no. 00A140962 shows that "the penalty assessed" was 10 days

1 disciplinary detention, 40 hours extra duty, 30 days loss of privilege and "reclass", meaning
2 referred for "reclassification." Plaintiff could have received a more severe penalty, including
3 loss of good time credits.

4 Plaintiff remained in detention for more than ten days because he had been charged
5 for another major violation in case no. 00A140963 and because of the normal lag time
6 between a disciplinary hearing and the reclassification hearing before the ICC. Plaintiff
7 waited 15 days, from September 28, 2000, until the ICC hearing on October 13, 2000. The
8 ICC recommended an increase in Plaintiff's P/I score from 3/3 to 3/5. Central Office
9 approved Plaintiff's new reclassification on October 19, 2000. Plaintiff by this time had been
10 in segregation for approximately 30 days.

11 Plaintiff was initially reclassified to the SMU but he remained in detention until
12 November 28, 2000 because of the lack of an available bed. On this latter date, a bed became
13 available in general population in the Rynning Unit. Plaintiff therefore remained in detention
14 for approximately 70 days from September 19, 2000, the date he was found guilty in Case
15 no. 00A140962, through November 28, 2000.

16 In Sandin, the Supreme Court indicated that placement in disciplinary segregation for
17 30 days did not constitute an atypical and significant hardship. Here, Plaintiff's penalty
18 imposed in case no. 00A140962 was ten days disciplinary segregation. The additional time
19 Plaintiff remained in segregation was due to the lag time in reclassification and the
20 unavailability of a bed in the Rynning Unit. Plaintiff did not lose good conduct credits.

21 In Resnick v. Hayes, 213 F.3d 443 (9th Cir. 2000), the Court of Appeals for the Ninth
22 Circuit affirmed the district court's dismissal of the complaint where the plaintiff had failed
23 to establish a violation of a liberty interest based on his confinement in the prison's SHU
24 pending a disciplinary hearing. The appellate court held that the plaintiff had not alleged that
25 his confinement, whether administrative or disciplinary, presented "the type of atypical,
26 significant deprivation [that] might conceivably create a liberty interest." Id., at 448.

27 In the present case, Plaintiff has not offered facts which demonstrate that his
28 confinement as a result of the disciplinary action in case no. 00A140962 was not within the

range of confinement to be normally expected by prison inmates "in relation to the ordinary incidents of prison life." Based on the undisputed facts of record, Defendants' supplemental motion for summary judgment as to Plaintiff's remaining claim asserted in Count I is granted.

**Accordingly,**

**IT IS ORDERED** that Defendants' supplemental motion for summary judgment (Doc. 117) is granted as to Plaintiff's remaining claim asserted in Count I.

**IT IS FURTHER ORDERED** that Judgment in favor of Defendants shall be entered consistent with this Order.

DATED this 26th day of March, 2006.

_____
Mary H. Murguia
United States District Judge